UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, * Docket No. 10-CR-142
*
*
*
* Buffalo, New York
v. * July 25, 2011
* 12:04 p.m.
*
MARY ANNE CATALANO, *
*
Defendant. *
*
* * * * * * * * * * * * * * *

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States: PAUL J. CAMPANA, ESQ.

For the Defendant: RODNEY O. PERSONIUS, ESQ.

Probation Officer: DAVID BALL

Court Reporter: YVONNE M. GARRISON, RPR
Official Court Reporter
U.S.D.C., W.D.N.Y.
2 Niagara Square
Buffalo, New York 14202
716-861-7568

THE CLERK: Criminal Action 2010-142A, United States versus Mary Anne Catalano, sentencing.

Counsel, please state your name and the party you represent for the record.

MR. CAMPANA: Paul Campana for the United States.

MR. PERSONIUS: Your Honor, Rodney Personius for Mary Anne Catalano.

Present also, Your Honor, just to observe today is Calvin Berry who is Ms. Catalano's attorney up in Canada.

THE COURT: All right.

MR. PERSONIUS: Mr. Berry here, Your Honor.

MR. BERRY: Thank you.

THE COURT: You may be seated at the table.

MR. PERSONIUS: Thank you, Judge.

THE COURT: Are we ready?

MR. CAMPANA: Yes.

MR. PERSONIUS: Yes, Your Honor.

THE COURT: The defendant stands before the Court for a sentencing on her previous plea of guilty to one count of willfully and knowingly making a false statement in a matter within the jurisdiction of the United States in violation of Title 18 United States Code Section 1001(a)(2).

I know, Mr. Personius, you've reviewed the report, and I assume you've reviewed it with your client.

MR. PERSONIUS: We did, Your Honor.

THE COURT: The Court accepts the terms and conditions of the plea agreement and the plea of guilty.

I will now place the presentence investigation report in the record under seal. If an appeal is filed, counsel on appeal will be permitted access to the sealed report, except that counsel on appeal will not be permitted access to the recommendation section.

The parties have filed the appropriate statement of parties with respect to sentencing factors. There's no dispute about the facts contained in the report. Therefore, the Court adopts these facts as its findings of fact and hereby incorporates them in the record.

There are no objections to the probation officer's conclusions as to the applicable guidelines. The report recommends that the base offense level under Guideline Section 2B1.1(a)(2) is 6.

The report also recommends a six-level upward adjustment pursuant to 2B1.1(b)(1)(D), and application note (3)(F)(v)(lll) in a case involving a scheme in which the goods for which regulatory approval by government agency was required but not obtained. The loss shall include the amount paid for the property, goods and services, or the goods transferred, rendered or misrepresented with no credit for the value of those items or services. Investigation via the payments for the good services and required government regulation but did

not receive -- exceeded 30,000 but were less than 70,000.

The report also recommends a two-level downward adjustment based upon the acceptance of responsibility, and accordingly, recommends the offense level at 10, with a criminal history category of I, with an advisory guideline range of six to 12 months; an advisory range for supervised release of two to three years; an advisory range for a fine is 2,000 to $20,000, plus the cost of imprisonment and supervised release.

In accordance with the Supreme Court decision U.S. versus Booker and the Second Circuit decision U.S. versus Crosby, this Court must consider the guidelines. It's not bound by them. The Court must also consider the factors in 18 U.S.C. 3553(a).

Now, the government has moved for a downward departure pursuant to 5K1.1 to a level 8. So the defendant's offense level is now 8, and a sentencing range of 0 to 6 months.

Now, Mr. Campana, the 5K motion is -- your request is under seal.

MR. CAMPANA: Yes, there's an affidavit filed under seal, yes.

THE COURT: Yeah. And I read it over, and it's -- how long do you want this under seal? I really don't like to put things under seal unless there's a valid reason for it.

And I want to know how long you feel that this thing -- this affidavit should be under seal.

MR. CAMPANA: I think for now, Your Honor, I would expect that the Court could unseal it after Dr. Galea is sentenced which could be as soon as October 19th.

THE COURT: All right. So your request is it be under seal until Dr. Galea is sentenced?

MR. CAMPANA: Yes.

THE COURT: What's your position on this, Mr. Personius?

MR. PERSONIUS: Your Honor, I think that given the fact that the government's investigation is continuing, I think there's merit to Mr. Campana's request.

THE COURT: All right. Well, we'll seal it until that time and then we'll unseal it on that day.

MR. CAMPANA: Thank you.

THE COURT: Okay. We're now at -- the government's requesting a two-level departure under 5K. So we're now at level 8.

MR. CAMPANA: Yes.

THE COURT: With a sentencing range of 0 to 6 months. And the defendant is also eligible for a term of probation of one to five years.

I have received, I believe it's eight letters attached to your sentencing memorandum which has been filed.

Mr. Personius, I'll hear from you on behalf of your client.

MR. PERSONIUS: Thank you, Your Honor.

Your Honor, in the submission that we filed on behalf of Ms. Catalano a week ago, we placed some emphasis on a description of the defendant made by Michelle Surace who is Mary Anne's cousin. And she described Mary Anne as a person of great integrity and commitment, and indicated that she has faced the challenges of the past two years since she was apprehended at the border back in September of 2009, with courage, dignity and grace.

The reason we emphasis that in our submission and the reason I repeat it today is in the two years that I've known Mary Anne Catalano, as her attorney, I find that those words capture the essence of the Mary Anne Catalano that I've come to know.

I suppose that that raises the question borrowing from an old pick up line of what's a nice girl like Mary Anne Catalano doing in a joint like this. In other words, how did she get involved in this activity with Dr. Galea.

As we indicate in our papers, Your Honor, Mary Anne Catalano began working with Anthony Galea when she was 15 years old. She was excited by the opportunity. She found Dr. Galea to be a person of great charisma. And when he offered her a full-time job, that, for her, was the opportunity of a

lifetime.

As time passed and she was promoted to the position of his first assistant in or around 2007, the job became even more interesting to her. On the one hand she was working in an area that she had always enjoyed, which was athletics; she was participating in the type of work that she'd always been interested in; and it had an element of travel to it; and an association with clientele which included many professional athletes. It couldn't have been for Mary Anne more exciting, Your Honor, than it was.

She recognizes now that she made a grave grave error. She became infatuated with that position that she held, and she developed an overwhelming desire to earn and maintain Dr. Galea's approval.

That led to a --

THE COURT: Well, trusted him.

MR. PERSONIUS: She did. She did. It's not an excuse for what she did.

THE COURT: No, I understand.

MR. PERSONIUS: But she did.

He's a very powerful personality. She was in an area that she wanted to be in. She was enjoying what she was doing. There was a certain prominence to it because of the type of activity that was involved, but it skewed her priorities. And that has led, Your Honor, as you know, to some very devastating

consequences.

She's 33 years old. She grew up in a very strict, Catholic family with a loving mother and father and a loving brother. She's now a convicted felon, and she will be that for the rest of her life.

Her name will always be a footnote to a very prominent criminal prosecution, both in Canada and the United States. Her ability to travel in the future back to the United States from Canada is in doubt. We're not saying that it's not going to happen, but there's no guarantee she's going to ever be able to return to the United States.

This prosecution for her has had some very dire financial consequences as well. She immediately gave up the job that she had with Dr. Galea after she was apprehended, and she's had to bear the financial burden of not one, but two attorneys: Me down here in Buffalo, and Mr. Calvin Berry, who's here in court today, up in Canada.

Maybe most importantly through this, Mary Anne found that she bankrupted her own ideals, the ideals that she had been taught by her parents.

In the letter that her brother wrote to the Court, he described it as the moral and ethical lens that had been instilled in him and Mary Anne by their parents. She let down her parents, she let down her brother, she let down her friends and family, and she let down herself.

And as she stands her now, Your Honor, at least what she can say, again, in the words of her cousin Michelle, is that she's dealt with all of this with a level of courage, dignity and grace.

When she was apprehended at the border after initially telling the story that Dr. Galea had suggested that she tell, she made the decision on her own, without the benefit of counsel, to talk to the investigators at the border, to tell them the truth, to engage in the follow-up activities that they asked her to engage in. And she did so with great vigor, and I guess I'd say with some level of success.

Since that time with the benefit of counsel, she's continued her cooperation, and it's been at an extraordinary level. I find it in my experience, Your Honor, to be unusual that the U.S. Attorney's Office in this case, acting through Mr. Campana, has gone so far as to not only recommend a downward departure, but to recommend to the Court that the sentence in this case entail a period of probation as opposed to a period of incarceration, or as opposed to not taking a position.

In addition to that --

THE COURT: That is very unusual.

MR. PERSONIUS: Yes, it is. The most that you usually can get, Your Honor, is for the government to say, you know, we won't take a position or we won't oppose probation.

But Mr. Campana has been gracious enough in this case to specifically indicate that the U.S. Attorney's Office recommends that you consider a sentence of probation.

THE COURT: You know, where is that?

MR. PERSONIUS: It's --

MR. CAMPANA: It's in our publicly filed motion.

MR. PERSONIUS: I think it's --

THE COURT: Okay.

MR. CAMPANA: It's the last paragraph of the public --

THE COURT: Not the sealed. Right. I got it.

I absolutely agree with you. That is -- now, I think I've seen maybe one of these ten years ago. You don't see them very often.

MR. PERSONIUS: It is unusual, Your Honor.

Your Honor, immediately after being apprehended Mary Anne Catalano, as of that day that she was apprehended, she severed all ties with Anthony Galea. There was no nurturing away from that. She stopped her contact with him, her employment with him immediately.

Because of how troubled she was, looking back at her behavior, she sought professional assistance to help her better understand how she got into this situation that she did.

And as you can see from the seven or so letters from family, friends, clergy and her employer that we've included

with our submission, her acceptance of responsibility in this case is categorical and rises to the level, I think, of being extraordinary. And what Mary Anne has done as well to demonstrate her courage, dignity and grace, Your Honor, is to redouble her commitment both to her family and to her faith. I don't know that --

THE COURT: She made almost -- in a way, got so involved with working that she kind of like forgot about her family.

MR. PERSONIUS: She did.

THE COURT: I got that impression from reading the papers.

MR. PERSONIUS: I think she says that, and again, none of this excuses what she did. None of it takes away from the seriousness of her behavior, but it's all, of course, pertinent information for you to consider in the context of sentencing.

I can say, Your Honor, that of all the many, many defendants that I've ever represented, I don't know that I've ever had the privilege of representing somebody that was more of an exceptional human being than Mary Anne Catalano. And I commend her to you for every possible consideration you feel is appropriate to give her at the time you impose sentence.

Thank you, Judge.

THE COURT: Ms. Catalano.

Are you all right, ma'am?

THE DEFENDANT: I'm okay.

THE COURT: Do you want take a break for a few minutes?

THE DEFENDANT: No, that's okay. I can get through this.

Your Honor, I take full responsibility for giving a false statement when entering the United States on September 14th, 2009. I knew what I was doing was unlawful, and I deeply regret -- I'm deeply regretful for not having used better judgement.

I am aware that the consequences of my actions not only impacted my life but many people close to me, both professionally and personally.

Most importantly I realize the tremendous impact and stress my decisions had on the lives of my family. The disappointment and embarrassment that I caused them I can never take away. My family has given me every opportunity to succeed in my life and they have instilled in me all the values that I required to become a successful, respectful and law-abiding adult, but my actions almost two years ago showed no reflection of their love and support.

It had been their continued guidance, unfailing love and my faith that has given me the strength to get through this time and the power to better my choices in life. I guarantee

that I have learned a very difficult lesson regarding my priorities in life and the consequences that my actions have.

I promise the Court that I will never engage in similar conduct in the future.

THE COURT: Mr. Campana.

MR. CAMPANA: Your Honor, Ms. Catalano's cooperation was immediate, substantial and effective. We ask the Court to impose sentence accordingly.

THE COURT: You know, sometimes imposing sentences are very difficult. Probably the -- one of the most difficult things a judge does. Looking over everything here, it's unfortunate that we're -- this has happened. Because this is not a difficult sentence for me. This is a very easy sentence.

Ms. Catalano cooperated almost from the get-go without a lawyer. She continued to cooperate. The remorse here is very substantial. I mean, this woman has suffered a lot for two years. She's admitted everything she did was unlawful. She apologizes to it, she's embarrassed herself, her family. And it appears to me that under all the circumstances here, a sentence of probation for one year is more than adequate to deal with this crime.

As I said, this is not a difficult sentence for me. It's a very easy one. I went through and read all those letters from her church, from her family members, her friends, and I think she suffered enough. And I hope she can pick up

all these pieces.

She's obviously reunited herself with her family. She got, as you say, Mr. Personius, caught up in the whole thing in dealing with well-known athletes, I guess. I guess you get caught up in that sometimes.

She's not a kid. She's 33-year old, but you know, sometimes you live in this little world and you don't see the big picture and so caught up in it I think sometimes we do it. We get so wrapped in what we do that we don't sometimes put things in proper perspective. This is one of the easiest sentences I ever had to impose.

During the period of probation she shall not commit another federal, state or local crime. Shall be prohibited from possessing a firearm or -- well, she's going to be on unsupervised release or unsupervised probation because she's a Canadian citizen, so there won't be any supervision in the United States. And, therefore, there's no indication she's ever been involved with drugs herself, and therefore, there's no drug testing required.

As I've said, the probation will be unsupervised since she is a Canadian citizen. I do not believe under all the circumstances and the expense that this whole thing has caused her financially -- obviously very severe -- I don't believe she has the ability to pay a fine. I'm not going to impose a fine, I'm going to waive it. However I will impose

the mandatory special assessment of $100 and hope that that can be paid forthwith, Mr. Personius.

MR. PERSONIUS: It will be paid today.

THE COURT: Get it paid, get everything to probation.

In determining the sentence, the Court has considered the advisory range and all the points raised by counsel, as well as the government's recommendation of a probationary period has been discussed. That's very unusual the government will recommend a probationary period. But after reading the affidavit and seeing all the cooperation she's done and the remorse that's here, it's evident that a probationary period at the low end is the appropriate sentence.

I've also considered the factors in 18 U.S.C. 3553(a), and finds that the sentence is more than sufficient, not greater than necessary to comply with the purposes of sentencing set forth under 3553(a).

I have granted the downward departure for the reasons that are stated in the government's papers.

And I believe this is a fair and just sentence under all the circumstances.

Ma'am, you made a terrible decision to do what you did. You paid a big price. You're going to be on federal probation for a year. It's not going to be any supervision.

Please do not come into the United States during that year, because that will be a violation of your probationary

period that will be restricted. She won't be able to return to the United States for one year. Then she'll have to get permission from the Department of Justice, I guess.

MR. PERSONIUS: Or Homeland Security.

THE COURT: Homeland Security to come back.

MR. PERSONIUS: Right.

THE COURT: That will be something she'll have to work out in the future. I have nothing to say about that.

MR. PERSONIUS: Your Honor, that would be subject to any further obligations she may have to the government regarding any ongoing investigation.

THE COURT: Right.

MR. CAMPANA: Yes.

THE COURT: Okay. Ma'am, you have a right to appeal the sentence if you feel the Court misapprehended its authority or imposed an illegal sentence. However, you did waive your right to appeal. If you feel that waiver is not a valid waiver, you may take that issue up before the Second Circuit Court of Appeals.

All I can tell you is that a year from now you paid your price, it's a big price. Go on with your life. You've got a lot going for you. You've got a great family, great friends, you've got a lot of people that really care about you. And I think you're going to be forever indebted to them for supporting you during this period of time.

Good luck to you, ma'am.

THE DEFENDANT: Thank you.

THE COURT: Mr. Campana.

MR. CAMPANA: There's a complaint to dismiss.

THE COURT: Motion's granted.

THE PROBATION OFFICER: Your Honor, we would recommend waiving the mandatory drug testing as well.

THE COURT: How would you like to do that?

THE PROBATION OFFICER: We waive, Your Honor.

THE COURT: Since supervision is going to be in Canada.

THE PROBATION OFFICER: Just for the record. For the record.

THE COURT: Unless you want me to bring her back here.

THE PROBATION OFFICER: No, Your Honor.

THE COURT: We'll waive the drug testing.

THE PROBATION OFFICER: All right, thank you.

THE COURT: Anything else I should say, Mr. Ball?

THE PROBATION OFFICER: No, Your Honor.

THE COURT: The Court will be in recess.

MR. PERSONIUS: Thank you, Judge.

(Proceedings concluded at 12:25 p.m.)

* * *

CERTIFICATION

I certify that the foregoing is a correct transcription of the proceedings stenographically recorded by me in this matter.

S/Yvonne M. Garrison, RPR

YVONNE M. GARRISON, RPR
Official Reporter
U.S.D.C., W.D.N.Y.